## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 12-cr-40015-JAR** |
| | ) | |
| **DAMON D. DUGAN**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on Defendant's Motion to Suppress Evidence (Doc. 15). Defendant seeks an order from the Court suppressing all evidence that officers of the Topeka Police Department seized from Defendant on the night of December 10, 2011, when the officers stopped a car in which Defendant was a passenger. Defendant claims that both the initial traffic stop and the later frisk violated his Fourth Amendment rights. The Government responded, arguing that the officers had the requisite level of suspicion to justify the traffic stop and the frisk. The Government therefore asserts that the Court should deny Defendant's motion because the officer's conduct fell within the parameters of the Fourth Amendment. The Court has thoroughly considered the parties' briefs and the evidence presented at the July 27, 2012 hearing on this motion, and the Court is now prepared to rule. As explained below, Defendant's motion is denied.

## I.      Factual Background

While on patrol in full uniform on the night of December 10, 2011, Topeka Police Officer Salmon stopped at a Kwik Shop gas station at 17th Street and Topeka Boulevard in Topeka, Kansas. Officer Salmon often stopped at this gas station during his patrol because it is

in a high crime area.  As Officer Salmon walked through the parking lot of the Kwik Shop back to his patrol car, he noticed suspicious activity from a passenger in the back seat of a red Buick—the passenger looked at Officer Salmon and then immediately ducked down in the back seat of the car.  Officer Salmon believed the individual looked familiar but could not identify him at that time.  Nonetheless, Officer Salmon found the activity suspicious and wanted to investigate further.  As the car drove out of the Kwik Shop parking lot, Officer Salmon noted the tag number and also noticed that the tag light was not illuminated as required by Kansas law.

Officer Salmon followed the car and also radioed to Officer Schumacher to keep an eye out for the vehicle.  Over the police radio, Officer Salmon described the vehicle, stated that he saw suspicious movements in the vehicle, and also noted that the vehicle had a defective tag light.  Officer Salmon temporarily lost sight of the vehicle because of traffic, but the two officers soon found it parked in a Walgreens' parking lot.

Officer Judd was also on patrol that night, and after hearing Officer Salmon on the police radio, he headed to the area to assist the other officers.  When the red Buick left the Walgreens' parking lot, all three officers were pursuing it.  Officer Judd followed directly behind the car and noted that it had a defective tag light in violation of Kansas law because the car had no light illuminating the rear registration plate.  As the car turned into an alleyway near Polk Avenue and 9th Street, Officer Judd activated his patrol car's lights and initiated the traffic stop.  The red Buick immediately stopped.  At about the same time, Officer Schumacher pulled in the alleyway behind Officer Judd and Officer Salmon approached the car in the alleyway from the opposite direction, facing the red Buick.

All of the officers stepped out of their vehicles and began to approach the car.  Officers

2

Schmacher and Salmon approached the driver's side of the car, and Officer Judd approached the passenger's side.  Three individuals sat in the car—a male driver, a female passenger in the front seat, and a male passenger in the back seat.  Defendant Dugan was the backseat passenger.

As Officer Salmon and Schumacher made contact with the driver, Officer Judd made contact with the two passengers.  When Officer Judd saw Dugan in the backseat, he recognized him immediately because Officer Judd had seen his photo and information about his criminal history in an intelligence bulletin provided to officers at the Topeka Police Department.  The intelligence bulletin identified Dugan as a confirmed criminal street gang member and gave information that he had carried weapons as a gang member.  Officer Judd noticed that Dugan wore no seat belt, and he asked Dugan for identification to confirm his identity.  Dugan was initially uncooperative and asked why he had to give identification, but he eventually gave Officer Judd an identification card.  Officer Judd noticed, however, that Dugan kept making furtive movements with his hands around his lap area.  Officer Judd decided to get Dugan out of the car because, based on Dugan's history, demeanor, and furtive movements, he thought Dugan might have a weapon and he worried about the personal safety of the officers.

When Officer Judd asked Dugan to step out of the car, Dugan was slow to cooperate consistently asking "why" to everything the officer did.  Once Dugan was out of the car, Officer Judd moved Dugan's hands behind his back and began a pat down.  When Officer Judd did this, the driver and the front seat passenger became uncooperative.  The female passenger started yelling profanities and tried to get out of the car.  Officer Judd worried that the three individuals might try to resist, so he handcuffed Dugan and moved him away from the red Buick towards his patrol car.  As the other officers took control of the individuals still in the car, Officer Judd asked

Dugan if he had any weapons.  Dugan asked, "Me?" and then told Officer Judd that the jacket he

wore did not belong to him.  Officer Judd patted down the jacket and felt what he believed to be

a weapon.  He then seized a small automatic pistol from the right pocket of Dugan's jacket.  The

firearm was loaded with a live bullet in the chamber and a full magazine.

After the traffic stop, the driver of the vehicle was cited for a defective tag light, the front

seat passenger was cited for interference, and Dugan was indicted in the instant case for being a

felon in possession of a firearm.

## II.     Discussion

Defendant argues that the officers did not have reasonable suspicion to stop the car in

which he was a passenger because the tag light was working and the officers were either

mistaken or incorrect.  Defendant further argues that even if the initial stop was legal, Officer

Judd violated his Fourth Amendment rights by requiring him to get out of the vehicle and submit

to a search because the officers had no reasonable suspicion that he was armed and dangerous.

The Government argues that the officers had reasonable suspicion for the initial stop based on

their observation of an equipment violation.  Further, the Government argues that the frisk of

Defendant outside of the car was legal because Officer Judd had reasonable suspicion to believe

that Defendant was armed and presently dangerous.  The Court finds both the initial stop and the

frisk of Defendant legal under the Fourth Amendment.

### A.     Initial Traffic Stop

A traffic stop implicates the Fourth Amendment because it is a seizure "even though the

purpose of the stop is limited and the resulting detention quite brief."[1]  Because a traffic stop is

---

[1]*Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

more analogous to an investigative detention than a custodial arrest, however, the reasonableness of the stop is analyzed under *Terry v. Ohio*.[2]  Under *Terry*, the stop must be justified at its inception and reasonably related in scope to the circumstances which justified the stop.[3]

A traffic stop is justified at its inception if the stop is based on an observed traffic or equipment violation or if the officer has a reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring.[4]  "Whether a traffic stop is valid under the Fourth Amendment turns on whether 'this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'"[5]  "Reasonable suspicion requires that an officer provide 'some minimal level of objective justification.'"[6]  Such objectively reasonable articulable suspicion, however, need not rest solely on the knowledge of the detaining officer.[7]  "Rather, the collective knowledge doctrine (sometimes referred to as the fellow officer rule) allows the objectively reasonable articulable suspicion to be based on the totality of the circumstances and 'the collective knowledge of all the officers involved.'"[8]  Reasonable suspicion may also rely on information less reliable than that needed to support probable cause even if the information is

---

[2]392 U.S. 1 (1968); *see also United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

[3]392 U.S. at 20.

[4]*United States v. McGehee*, 672 F.3d 860, 867 (10th Cir. 2012) (citing *Botero-Ospina*, 71 F.3d at 787).

[5]*United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (quoting *Botero-Ospina*, 71 F.3d at 787).

[6]*Id.* (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)).

[7]*United States v. Watkins*, 243 F. App'x 356, 358 (10th Cir. 2007).

[8]*Id.*

incorrect.[9]  In any event, the Court must undertake a context-specific inquiry, and ask whether the facts available to the detaining officer, at the time of detention, "warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'"[10]

Here, Officer Judd initiated the traffic stop.  At the time of the initial stop, not only had Officer Judd heard from Officer Salmon that the car had an equipment violation, he also observed the equipment violation while following the car.  Under K.S.A. § 8-1706(c): "Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty (50) feet to the rear."  Officer Judd noted that it was approximately 11:00 p.m., but the car had no light illuminating the rear registration plate.  Although Defendant argues that the tag light was not defective and the officers asserted a false reason for the stop, the Court finds Officer Judd's and Officer Salmon's testimony credible.  Further, even if Defendant is correct and the tag light was not defective, based on his own observations and Officer Salmon's information, Officer Judd had a reasonable, articulable suspicion to believe that an equipment violation was occurring. Therefore, the initial traffic stop was valid under the Fourth Amendment.

### B.      Frisk of Defendant

The frisk of Defendant outside of the car was also valid under the Fourth Amendment. An officer may order a passenger out of a car as part of a valid traffic stop without any suspicion of criminal activity.[11]  An officer may also frisk an individual stopped as part of a traffic

---

[9]*Vercher*, 358 F.3d at 1261.

[10]*United State v. McGehee*, 672 F.3d 860 (10th Cir. 2012) (quoting *Terry v. Ohio*, 392 U.S 1, 21–22 (1968)).

[11]*Maryland v. Wilson*, 519 U.S. 408, 414 (1997).

violation if the officer has a reasonable suspicion that the person is armed and presently dangerous.[12] A variety of unlawful activities support a reasonable, articulable suspicion that a person is armed and dangerous.[13] These include drug trafficking, involvement in gang activity, presence in a high crime area, and unwillingness to speak to an officer.[14] Nervous and evasive behavior can also tip the scales toward reasonable suspicion to search if a suspect refuses to comply with an officer's demands.[15]

And during any traffic stop, officers have reason for caution: "'An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation. The motorist must suspend his or her plans and anticipates receiving a fine and perhaps even a jail term.'"[16] Additionally, the fact that a vehicle holds more than one occupant increases the possible sources of harm to an individual officer.[17] But still, the Tenth Circuit has noted that the pat down search of a passenger of a car is illegal when based only on the passenger's misrepresentation that his driver's license was valid and knowledge that the passenger had a prior criminal history involving armed robbery.[18]

Here, however, Officer Judd had more reason to fear for his safety than just Dugan's criminal history and Dugan's statements. Officer Judd knew of Dugan's involvement in gang

---

[12]*See, e.g.*, *United States v. Albert*, 579 F.3d 1188, 1193–94 (10th Cir. 2009).

[13]*United States v. House*, 463 F. App'x 783, 787 (10th Cir. 2012).

[14]*Id.* (citing *United States v. Garcia*, 459 F.3d 1059, 1064–66 (10th Cir. 2006); *United States v. Maddox*, 388 F.3d 1356, 1366–67 (10th Cir. 2004)).

[15]*Id.* (citing *United States v. Harris*, 313 F.3d 1228, 1231 (10th Cir. 2002)).

[16]*Albert*, 579 F.3d at 1194 (quoting *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001)).

[17]*Id.* (citing *Maryland v. Wilson*, 519 U.S. 408, 413 (1997)).

[18]*Id.* (citing *United States v. Powell*, 666 F.3d 180, 185–88 (4th Cir. 2011)).

activity and that he carried guns as a gang member.  Officer Judd also knew that Officer Salmon had witnessed suspicious activity from Dugan at the Kwik Shop, Dugan was uncooperative with Officer Judd's requests during the stop, and Dugan made furtive movements while Officer Judd spoke to him.  Based on the situation as Officer Judd observed it, he believed Dugan was armed and presently dangerous.  Considering all of the circumstances of the stop, the Court finds Officer Judd's belief supported by reasonable, articulable suspicion.  As a result, Officer Judd's frisk of Defendant was legal under the Fourth Amendment.

**III.**     **Conclusion**

Because the Court finds both the initial stop and the frisk of Defendant legal under the Fourth Amendment, Defendant has not identified a legitimate reason for suppression of evidence.  Therefore, the Court must deny Defendant's motion to suppress.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress Evidence (Doc. 15) is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2012

                         S/ Julie A. Robinson

                         JULIE A. ROBINSON

                         UNITED STATES DISTRICT JUDGE